SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**CASSADY A. ADAMS, CO Bar #48807**
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00285-SI** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **GREGORIO ABRAHAM SOTO-MONDRAGON,** | |
| **Defendant.** | |

### Introduction

Defendant Gregorio Abraham Soto-Mondragon is before the Court for sentencing

following entry of a guilty plea to the charge of possession with intent to distribute

methamphetamine (500 grams or more), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).

Soto-Mondragon was a drug courier who was arrested with approximately 19 kilograms

of methamphetamine and one kilogram of cocaine at a bus stop in Portland in June 2025.

**Government's Sentencing Memorandum**                                                    **Page 1**

Given Soto-Mondragon's limited role as a courier and his early acceptance of responsibility, the United States recommends a sentence of 21 months custody, followed by five years of supervised release.

## Factual Background

### A. The Offense Conduct

On June 13, 2025, Portland Police Bureau (PPB) and Homeland Security Investigations (HSI) received a tip that an individual (later identified as the defendant, Gregorio Soto-Mondragon) was suspected to be transporting controlled substances on a bus travelling from California to Portland. PSR ¶ 18. Investigators went to the bus stop in question as the bus was dropping off passengers near Southeast 99th Avenue and Stark Street in Portland. PSR ¶ 19.

Soto-Mondragon got off the bus, retrieved two suitcases, and began to walk away toward a strip mall parking lot. *Id.* Investigators contacted Soto-Mondragon, and he provided consent for police to search his luggage. *Id.*

Inside the first suitcase, investigators found 42 vacuum sealed packages with approximately 19.9 gross kilograms of methamphetamine. PSR ¶ 20. The first case also contained a T-shirt with Soto-Mondragon and a child (believed to be his son) depicted. Inside the second suitcase, they found one brick of approximately one kilogram of cocaine. *Id.*[1]

---

[1] The second suitcase also contained 6.944 gross kilograms of a crystalline substance. This substance tested presumptively negative for methamphetamine. *See* Criminal Complaint Affidavit, ¶ 15. Thus, this 6.944 kilogram amount is not included in Soto-Mondragon's relevant conduct. This does not affect his guideline calculation in the presentence report or plea agreement.

**Government's Sentencing Memorandum**                                              **Page 2**

Photographs of the seized controlled substances are shown below. The packages of methamphetamine are shown on the left (along with a redacted photograph the above-mentioned T-shirt), and the brick of cocaine is shown on the right.



In a post-arrest interview, Soto-Mondragon admitted that he knew of the drugs in his luggage. PSR ¶ 21. The investigation revealed that Soto-Mondragon's role was a courier working for a drug trafficking organization to pay off a prior debt. PSR ¶¶ 21-22. He did not have decision-making authority within the organization. PSR ¶ 22.

On July 1, 2025, a federal grand jury returned an indictment charging Soto-Mondragon with one count of possession with intent to distribute methamphetamine (500 grams or more), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II).

## B. The Plea Agreement & Guideline Computations

On February 3, 2026, Soto-Mondragon pleaded guilty to count one of the indictment, possession with intent to distribute methamphetamine. PSR ¶ 1.

The presentence report has calculated Soto-Mondragon's criminal history score to be zero, and his criminal history category is I. PSR ¶ 41.

**Government's Sentencing Memorandum**                                      **Page 3**

The government agrees with the guideline calculations in the presentence report, which are consistent with the plea agreement in this case. PSR ¶¶ 28-37.

Additionally, the government is recommending a three-level downward variance under 18 U.S.C. § 3553(a) to account for defendant's prompt notice to the government of defendant's intent to plead guilty and accept responsibility. PSR ¶ 13.

Pursuant to the plea agreement, the government recommends the Court impose a sentence of 21 months custody, followed by a five-year term of supervised release, and a $100 fee assessment.

## Argument

### A. 18 U.S.C. 3553(a) Sentencing Factors

There are general factors that district courts take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Sentencing Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

**Government's Sentencing Memorandum**                                             **Page 4**

18 U.S.C. § 3553(a)(1)-(7).

Many of the § 3553(a) factors warrant the sentence requested by the government in this case, including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of the criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . afford adequate deterrence . . . protect the public . . . ." and to provide needed education, training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

### B.  Analysis of Sentencing Factors

This case involves the defendant, Soto-Mondragon, acting as a drug courier transporting a large amount of methamphetamine (over 19 kilograms) as well as a kilogram of cocaine during the summer of 2025.

This conduct was serious because it involved methamphetamine – an addictive stimulant that can cause increased heart rate and blood pressure, anxiety, violent behavior, and paranoia. *See* DEA Drug Fact Sheet – Methamphetamine (Apr. 2020), available at https://www.dea.gov/sites/default/files/2020-06/Methamphetamine-2020_0.pdf . Soto-Mondragon also transported cocaine, which is also an addictive stimulant and can cause heart problems, strokes, and even overdose death. *See* DEA Drug Fact Sheet – Cocaine (Dec. 2024), available at https://www.dea.gov/sites/default/files/2025-01/Cocaine-2024-Drug-Fact-Sheet.pdf . Fortunately, the methamphetamine and cocaine trafficked by Soto-Mondragon was interdicted by law enforcement before it reached the streets in Portland.

Soto-Mondragon's crime was financially motivated, as well as motivated by attempting to help his family: he was repaying a debt by acting as a drug courier in this case. PSR ¶¶ 21-22.

**Government's Sentencing Memorandum**                                                    **Page 5**

From a review of Soto-Mondragon's phone, he did not appear to have a drug customer base of people that he was selling drugs to, and he did not appear to be giving orders to other people. This does not excuse his drug trafficking conduct, but it is mitigating circumstances that make the role adjustments in the guidelines appropriate. *See* PSR ¶¶ 28-31. Nonetheless, couriers play an important role in any drug trafficking organization by helping to move controlled substances to places where they can be sub-distributed and potentially cause harm to others.

Soto-Mondragon has no criminal history, including no prior arrests. PSR ¶¶ 39-44. He also indicated a willingness to accept responsibility in an early manner in this case. PSR ¶ 13.

Furthermore, because he is not a United States citizen, Soto-Mondragon is subject to removal from the United States as a collateral consequence, upon the conclusion of his sentence in this case. PSR ¶ 5.

The requested sentence of 21 months custody and five years supervised release promotes respect for the law, provides just punishment, and affords adequate deterrence by holding Soto-Mondragon responsible for his role in transporting controlled substances into the Pacific Northwest.

### Conclusion

Based on the foregoing, the government recommends the Court impose a sentence of 21 months custody, followed by a five-year term of supervised release, and a $100 fee assessment.

Dated: April 16, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/Cassady A. Adams*
CASSADY A. ADAMS, CO Bar #48807
Assistant United States Attorney

**Government's Sentencing Memorandum**                    **Page 6**